IN THE UNITED STATES DISTRICT COURT FOR THE DISTIRCT OF MARYLAND

HARLEYSVILLE WORCESTER      *
INSURANCE CO. a/s/o BARBARA FORD
                                                                *

Plaintiff,

                                                                *   Case No.: 1:20-cv-00802

v.

                                                                *

AIR VENT, INC., POWERMAX
ELECTRIC CO., LTD, DM (Asia)      *
LIMITED, and KING OF FANS, INC.,
                                                               *

Defendants.
                                                                *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**DEFENDANT AIR VENT, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND CROSS-CLAIM AGAINST DEFENDANTS POWERMAX EXLECTRIC CO., LTD., DM (Asia) LIMITED, and KING OF FANS, INC.**

Defendant, Air Vent, Inc. ("AVI") by undersigned counsel hereby Answers the Plaintiff's Complaint filed against it and state the following:

1. As to paragraphs 1 through 4 of Plaintiff's Complaint, AVI is without sufficient information or knowledge to admit or deny those allegations, and therefore, AVI denies the same.

2. AVI denies the allegations of paragraph 5 of the Plaintiff's Complaint.

3. AVI is without sufficient information to admit or deny the allegations in Paragraph 6, and therefore, AVI denies same.

4. AVI admits the allegations of paragraph 7 of Plaintiff's Complaint.

5. Upon information and belief, AVI believes that allegations in Paragraph 8 are true.

6. Upon information and belief, AVI believes that allegations in Paragraph 9 are true.

7. Upon information and belief, AVI believes that allegations in Paragraph 10 are true.

8. Upon information and belief, AVI believes that allegations in Paragraph 11 are true.

9. AVI is without sufficient knowledge or information to admit or deny the allegations in paragraphs 12 through 15.

10. AVI denies the allegations in paragraph 16.

11. AVI denies the allegations in paragraph 17.

12. AVI denies as phrased the allegations in paragraph 18 as AVI denies that it manufactured or designed the fan motor. AVI denies the allegations of paragraph 18 to the extent that the APGH fan in question was not altered or damaged in any manner whatsoever by Barbara Ford at any time after the purchase of the fan.

13. AVI denies the allegations of paragraph 19.

14. AVI denies the allegations of paragraph 20.

15. AVI denies the allegations of paragraph 21.

### **PLAINTIFF'S COUNT I – STRICT LIABILITY – DESIGN DEFECT (ALL DEFENDANTS)**

16. AVI incorporates by reference the contents of paragraphs 1 through 13 of its Answer.

17. AVI cannot admit or deny the allegations set forth in Paragraph 22 as it is merely a summary of allegations. To the extent that further response is required, these allegations are denied.

18. AVI denies the allegations of paragraphs 23 through 30.

19. AVI is unable to admit or deny the allegations of paragraph 31 as the allegations contained therein are Plaintiff's legal conclusions.

20. AVI is unable to admit or deny paragraph 32 as it constitutes a request to amend a pleading. To the extent that further response is required, AVI denies paragraph 32.

21. AVI denies the allegations of paragraph 33.

**PLAINTIFFS' COUNT II – STRICT LIABILITY – MANUFACTURE DEFECT**
**(All Defendants)**

22. To the extent that Plaintiff's Complaint inadvertently omitted paragraphs 34-40, no response is required.  To the extent that any additional response is required, AVI denies the allegations of any allegations omitted in paragraphs 34-40.

23. AVI incorporates by reference paragraphs 1 through 19 of its Answer.

24. AVI cannot admit or deny the allegations set forth in Paragraph 41 as it is merely a summary of allegations. To the extent that further response is required, these allegations are denied.

25. AVI denies the allegations of paragraph 42.

26. AVI denies the allegations of paragraphs 43 through 49.

27. AVI is unable to admit or deny the allegations of paragraph 50 as the allegations contained therein are Plaintiff's legal conclusions.

28. AVI is unable to admit or deny paragraph 51 as it constitutes a request to amend a pleading. To the extent that further response is required, AVI denies paragraph 51.

29. AVI denies the allegations of paragraph 52.

**PLAINTIFF'S COUNT III – NEGLIGENCE – NEGLIGENT DESIGN (All Defendants)**

30. AVI incorporates by reference paragraphs 1 through 27 of its Answer.

31. AVI cannot admit or deny the allegations set forth in Paragraph 53 as it is merely a summary of allegations. To the extent that further response is required, these allegations are denied.

32. AVI denies the allegations of paragraph 54.

33. AVI denies the allegations of paragraphs 55 through 62.

34. AVI is unable to admit or deny the allegations of paragraph 63 as the allegations contained therein are Plaintiff's legal conclusions.

35. AVI is unable to admit or deny paragraph 64 as it constitutes a request to amend a pleading. To the extent that further response is required, AVI denies paragraph 64.

36. AVI denies the allegations of paragraph 65.

### PLAINTIFF'S COUNT IV – NEGLIGENCE – NEGLIGENCE MANUFACTURE (All Defendants)

37. AVI incorporates by reference paragraphs 1 through 34 of its Answer.

38. AVI cannot admit or deny the allegations set forth in Paragraph 66 as it is merely a summary of allegations. To the extent that further response is required, these allegations are denied.

39. AVI denies the allegations of paragraphs 67 through 75.

40. AVI is unable to admit or deny the allegations of paragraph 76 as the allegations contained therein are Plaintiff's legal conclusions.

41. AVI is unable to admit or deny paragraph 77 as it constitutes a request to amend a pleading. To the extent that further response is required, AVI denies paragraph 77.

42. AVI denies the allegations of paragraph 78.

### PLAINTIFF'S COUNT V – BREACH OF WARRANTY (All Defendants)

43. AVI incorporates by reference paragraphs 1 through 40 of its Answer.

44. AVI cannot admit or deny the allegations set forth in Paragraph 79 as it is merely a summary of allegations. To the extent that further response is required, these allegations are denied.

45. AVI is unable to admit or deny the allegations of paragraph 80 as the allegations contained therein are Plaintiff's legal conclusions.

46. AVI denies the allegations in paragraphs 81 through 85.

47. AVI is unable to admit or deny the allegations of paragraph 86 as the allegations contained therein are Plaintiff's legal conclusions.

48. AVI is unable to admit or deny paragraph 87 as it constitutes a request to amend a pleading. To the extent that further response is required, AVI denies paragraph 87.

49. AVI denies the allegations of paragraph 88.

## Defenses

1.  The Complaint, and each cause of action alleged, fails to state a claim upon which relief can be granted and AVI acted appropriately at all times.

2.  AVI fully satisfied all warranties, guarantees and/or representations which it may have made with regard to any product or goods at issue in the case.

3.  AVI's obligations to Plaintiff's insured, if any, and Plaintiff's insured's remedies, if any, and by which Plaintiff is limited, are limited in accordance with the terms, conditions and limitations of the express warranties, if any, extended by AVI or any of the other parties to the case.

4.  Plaintiff's claims are barred, in whole or in part, by the terms of the express warranties, if any, extended by AVI or any of the other parties to the case.

5.  Plaintiff's claims are barred by the limited warranty or warranties on the product or goods at issue in the case.

6.  Plaintiff's injuries, if any, were caused by the actions of third-parties over whom AVI has no control.

7.  Plaintiff's claims are barred, in whole or in part, by its insured's assumption of the risk of injury.

8. Plaintiff's claims are barred, in whole or in part, by its insured's contributory negligence.

9. Plaintiff and its insured failed to mitigate their damages, if any.

10. Plaintiffs' claims are barred to the extent they misused or abused the product or goods at issue in the case. Further, AVI does not manufacture or design any part of the product at issue in this case that is capable of malfunctioning and/or causing a fire.

11. AVI reserves the right to assert additional grounds of defense as discovery warrants and as permitted by the Federal Rules of Civil Procedure and the Local Rules of this Honorable Court.

## DEFENDANT AIR VENT, INC.'S CROSSCLAIM AGAISNT POWERMAX ELECTRIC CO., LTD., DM (Asia) LIMITED, and KING OF FANS, INC.

1. Beginning at a time unknown to AVI but no later than June 1982, Chien Luen Industries, Taiwan, China was a fan and fan motor manufacturer founded by Shth Tza Wu and John C. Bucher.

2. Mr. Bucher and Mr. Wu set-up Chien Luen Industries, Taiwan, China as the manufacturing and sales arm for their U.S. enterprises.

3. On or about June 2, 1982, King of Fans, Inc., was founded and incorporated in Florida by Mr. Bucher and Mr. Wu.

4. Upon information and belief, KOF was founded to be the U.S. design, sales, distribution, manufacturing, service, and repair face for Chien Luen Industries, Taiwan, China ("CLI Taiwan, China").

5. In addition, KOF was also set-up as the U.S. headquarters for the operations of PowerMax.

21. Essentially, KOF was the U.S. face of Mr. Wu and Mr. Bucher's Asian and worldwide business operations.

22. Sometime thereafter, KOF entered into exclusivity agreements for the sale, distribution, manufacture, service, and repair of residential and commercial fans and their component parts including fan motors with one of the largest home improvement retailers in the U.S.

23. Because of these exclusivity agreements, KOF needed to form an alter ego corporation to sell fans and fan motors to other U.S. retailers and buyers.

24. On or about February 3, 1986, KOF created its alter ego, Chien Luen Industries ("CLI USA"), to evade its exclusivity agreements.

25. Sometime before February 1986, KOF through CLI USA began selling and distributing CLI Taiwan, China's manufactured fans and component parts into the U.S. Stream of Commerce.

26. Later, but sometime before December 1999, CLI Taiwan, China ceased its manufacturing operations in Taiwan, China.

27. Thereafter, CLI USA, and CLI Taiwan, China formed Chien Luen Industries CN as their fan and components parts manufacturing factory in Zhongshan, China.

28. Soon thereafter, CLI Taiwan, China became one of the Asian Corporate Headquarters for KOF and PowerMax Electric Co., Ltd. ("PowerMax").

29. On April 8, 2002, KOF filed a U.S. Trademark Application as the "Owner" of the name "Powermax". The Trademark was for the following goods and services:

> "environmental control apparatus, namely, circulating fans for domestic and commercial use; ceiling and wall surface mounted fans, fixtures and parts therefor; portable electric fans, fixtures and parts therefor; freestanding electric fans, fixtures and parts therefor; electric

   desk fans, fixtures and parts therefor; and electric high velocity floor
   fans, fixtures and parts therefor."

30. Upon information and belief, the Trademark Application used a KOF labeled fan manufactured at its PowerMax factory as the specimen for the application.

31. The Trademark Application states KOF has been using the "PowerMax" name for fans that were manufactured at the PowerMax factory as early as "2000."

32. KOF renewed the PowerMax trademark on or about September 5, 2015.

34. PowerMax's fans and fan motors are manufactured at its PowerMax factory and are registered and tested by United Laboratories ("UL").

35. The fans and fan motors are advertised on the PowerMax website.

36. Upon information and belief, the joint venture designed, applied for U.S. Patents, and manufactured attic ventilation fans, their component parts including, but not limited to, fan motors that are substantially similar to the ones designed and manufactured for AVI.

## The PowerMax Scheme on AVI

37. In or around 2002, PowerMax's employees/agents solicited to design and manufacture fan motors for AVI's ventilation fans.

38. During a meeting with PowerMax, AVI's personnel were informed by PowerMax's employees/agents that PowerMax's owner is KOF.

39. Subsequently, AVI's personnel flew to China to visit the PowerMax manufacturing factory.

40. At the meeting in China, AVI's personnel were informed that PowerMax is a wholly owned subsidiary of KOF.

41. Upon information and belief since at least 2002, PowerMax has operated and has been controlled by the joint venture as part of its "Asian Factory" and "Asian Headquarter." As part of the organizational structure established and mandated by the joint venture, PowerMax operates and is controlled by the joint venture through officers and corporate management that are joint of the joint venture.

42. All fan motors manufactured by PowerMax were purchased by AVI from DM Asia, Ltd. ("DMA"). These fan motors were purchased "in bulk" through the issuance of purchase orders to DMA. DMA arranged for all motors ordered by AVI to be manufactured by PowerMax. PowerMax invoices to DMA reflect that PowerMax manufactured and shipped motors to DMA for AVI, as the PowerMax invoices contain AVI part numbers assigned to the various motors ordered by AVI. PowerMax and its manufacturing facility is also listed as an approved manufacturing site on DMA's UL manufacturing approval list.

## Imposter AVI Fans Enter the Market

43. Imposter attic fans from PowerMax's facility appear substantially similar to AVI's products.

44. Upon information and belief, PowerMax fans are marketed as "private label" fans for certain retailers.

45. Upon information and belief, the "private label" fans are intentionally designed and manufactured to "look" exactly like those sold by AVI.

46. Upon information and belief, "counterfeit fans" or "imposter fans" that have been placed into the marketplace by knock-off manufacturers who incorporated the PowerMax motors into their fan designs, using the exact same fan and fan blade designs as AVI.

47. The imposters manufacture and purchase fan motors from the same source AVI

used to purchase fan motors.

48. The imposter fans and fan motors' housings have been replicated to the smallest detail, making it impossible for any person to reasonably conclude that a particular attic vent fan that has been involved in a house fire was manufactured by AVI.

49. AVI alleges that the KOF, DMA, and PowerMax Joint Venture manufactured and sold the fan motor that is at issue in this case and, as such, is liable for placing the product in the stream of commerce with the intention that the product be used by residents of the United States and the State of Maryland.

50. If AVI is liable to the Plaintiffs in this matter, KOF, DMA, and PowerMax are liable to AVI as the manufacturers and/or designers and/or sellers of the fan and/or fan motor at issue in this matter.

## COUNT I - Implied and/or Equitable Indemnity – All Cross-Defendants

51. AVI incorporates by reference paragraphs 1 through 50 of its Crossclaim.

52. PowerMax, DMA, and KOF breached duties owed to the Plaintiffs and to AVI. The negligent and wrongful acts and omissions of PowerMax proximately caused Plaintiff's alleged damages.

53. AVI is not at fault for and did not cause Plaintiff's alleged underlying damages.

54. Furthermore, AVI denies any and all legal liability and responsibility for the acts alleged in Plaintiff's Complaint.

**WHEREFORE**, Cross-Defendants PowerMax, DMA, and KOF must indemnify AVI in the event that Plaintiffs prevail on any theory of recovery against AVI as asserted in the underlying Complaint. AVI therefore demands judgment against PowerMax, DMA, and KOF for indemnity in full with respect to any damages, fees, and costs that may be awarded to Plaintiff against AVI,

including all or part of the claimed compensatory damages and all other damages of any kind sought by Plaintiff in the underlying Complaint.

### COUNT II – CONTRIBUTION – All Cross-Defendants

55. AVI incorporates by reference paragraphs 1 through 54 of its Crossclaim.

56. AVI denies any and all legal liability and responsibility for the acts alleged in Plaintiff's underlying Complaint.

57. If AVI is found liable to Plaintiff, which liability is denied, AVI asserts that the negligence and other wrongful conduct by PowerMax, DMA, and KOF, were primary and proximately caused or contributed to any loss, liability, damages, or costs or other expenses which found to have been sustained by the Plaintiff.

**WHEREFORE**, AVI therefore demands judgment against PowerMax, DMA, and KOF for contribution to any amount awarded to Plaintiff and against AVI, including all or part of the claimed compensatory damages and all other damages of any kind sought by Plaintiff in the underlying Complaint.

### COUNT III – CONTRACTUAL INDEMNIFICATION – All Cross-Defendants

58. AVI incorporates by reference paragraphs 1 through 57 of its Crossclaim.

59. All fan motors purchased by AVI from the PowerMax, DMA, and KOF Joint Venture were purchased through the issuance of formal Purchase Orders ("PO") which contained Purchase Order Terms and Conditions ("POTC") that were included with and made a part of each Purchase Order. *See* Exhibit A.

60. Each shipment of fan motors AVI received from PowerMax, DMA, and KOF was accompanied by "confirmations" which referenced the separately numbered PO with the POTC attached.

61. The POTC are a binding and enforceable part of the transaction between AVI and PowerMax, DMA, and KOF.

62. The Purchase Order Terms and Conditions in pertinent part states:

12. INDEMNIFICATION. To the fullest extent permitted by law, Seller agrees to indemnify, defend, and hold harmless Buyer, its affiliates, and their respective directors, officers, employees and agents (the "Indemnified Parties") from and against all claims, demands, causes of action, losses, costs and expenses (including without limitation reasonable attorneys' fees and costs of defense) (collectively, "Losses") arising out of or incident to Seller's performance hereunder, or the presence of Seller, its employees, agents or invitees ("Seller Parties") on Buyer's premises, provided that such Losses are attributable to (a) the negligence or willful misconduct of the Seller Parties, (b) the failure of the Seller Parties to comply with applicable laws, or (c) bodily injury, sickness, disease or death (including but not limited to bodily injury, sickness, disease or death of the employees of Seller or Buyer), or to damage to or destruction of tangible property (including the loss of use thereof); in each case regardless of whether or not caused in part by the negligence or other fault of any Indemnified Party hereunder; provided that Seller shall not be liable for Losses caused by the sole negligence or willful misconduct of any Indemnified Party.

63. Assuming Plaintiff proves the fire originated in the attic fan, was caused by a defective fan motor, and the fan was sold by AVI, then PowerMax, DMA, and KOF are at fault for the fire as it was the manufacturer and designer of the fan motor that is alleged to have caused Plaintiff's damages.

64. Assuming Plaintiff proves their case, then the cause of Plaintiff's damages, if any, would be due solely to the negligence of PowerMax, DMA, and KOF.

65. AVI is without fault in causing the fire.

66. AVI is without fault in causing Plaintiff's alleged damages.

67. If Plaintiff recovers judgment against AVI, the recovery will be solely a result of PowerMax, DMA, and KOF's negligence and not by any fault on the part of AVI.

68. AVI did not participate in the design or manufacture of the attic fan motor that is the subject of Plaintiff's Complaint.

69. However, Plaintiffs are attempting to hold AVI, who is without fault, liable for damages allegedly sustained as a result of this incident. Accordingly, contractual indemnity is applicable in this matter.

70. AV1 has incurred legal expenses, damages, and faces a potential judgment due to the negligence of PowerMax, DMA, and KOF, which should be the legal responsibility of PowerMax, DMA, and KOF.

71. Accordingly, PowerMax, DMA, and KOF should indemnify AVI for all amounts for which AVI may be liable to Plaintiff, including damages, costs, attorney's fees, or other sums AVI is assessed.

72. PowerMax, DMA, and KOF's negligent acts directly caused or contributed to any and all losses and/or damages determined to have been sustained by Plaintiffs in the underlying action.

**WHEREFORE,** AVI, respectfully requests that in the event judgment is entered against AVI and in favor of Plaintiff, this Honorable Court enter judgment in favor of AVI and against Defendants/Cross-Defendants, PowerMax, DMA, and KOF in the amount of any judgment entered against AVI and that AVI be awarded its attorney's fees, plus pre-judgment interest, costs, and any other such relief this Honorable Court deems appropriate under the circumstances.

### COUNT IV- BREACH OF CONTRACT (All Cross-Defendants)

73. AVI incorporates by reference paragraphs 1 through 72 of its Crossclaim.

74. Because PowerMax, DMA, and KOF failed to properly design, distribute, manufacture, properly maintain, service, repair, recall or inspect fan motors it sold to AVI, which is the subject of Plaintiff's claims against AVI, PowerMax, DMA, and KOF committed a material breach of the Purchase Order and its Terms and Conditions.

75. As a result of PowerMax, DMA, and KOF's material breach of contract, AVI sustained and continues to sustain damages stemming from PowerMax, DMA, and KOF's material breach of contract.

**WHEREFORE,** AVI, respectfully requests that this Honorable Court enter judgment against Defendants/Cross-Defendants, PowerMax, DMA, and KOF for breach of contract, for taxable cost incurred in the defense of Plaintiff's claims, and for prosecuting this action against PowerMax, DMA, and KOF in an amount to be determined at trial, plus pre-judgment interest, costs, and any other such relief this Honorable Court deems appropriate under the circumstances.

**COUNT V – BREACH OF EXPRESS WARRANTIES (All Cross-Defendants)**

72. Through designing, manufacturing, distributing and/or selling the fan motor, PowerMax, DMA, and KOF knew or should have known that the fan motor would be used by consumers, such as the AVI, and/or incorporated into products used by consumers, such as AVI.

73. AVI had a right to rely upon, and in fact did rely upon, the superior skill and judgment of PowerMax, DMA, and KOF in designing, manufacturing, distributing and/or selling the fan motor.

74. All fan motors purchased by AVI from PowerMax, DMA, and KOF were purchased through the issuance of formal POs which contained the POTC that were included with and made a part of each PO.

75. Each shipment of fan motors AVI received from PowerMax, DMA, and KOF was accompanied by "confirmations" which referenced the separately numbered PO with the POTC attached.

76. The POTC is a binding and enforceable part of the transaction between AVI and PowerMax, DMA, and KOF.

77. In the POTC, PowerMax, DMA, and KOF provided AVI with express warranties for their fan motors, including the following:

> 9. Seller's Warranties. Seller expressly warrants that for a period of one year after Buyer's acceptance of the goods or services hereunder, or for such longer period as may be expressly provided in this Purchase Order or under applicable law, all goods and services covered by this Purchase Order will: (a) strictly conform to Seller's specifications, drawings, samples and other written materials and descriptions, or, to the extent the goods were purchased to Buyer's specifications al 1d drawings as set forth or referred to in this Purchase Order, that the goods strictly conform with those specifications and drawings;
> (b) be free from defects in design, material and workmanship; (c) be of merchantable quality and suitable for the particular purposes intended, whether express or reasonably implied; and (d) bear all warnings, labels, al 1 d markings required by applicable laws and regulations. In addition, Seller warrants that: (e) none of the goods covered hereby, to the extent they are subject to laws prohibiting adulteration or misbranding, is adulterated or misbranded within the meaning of such laws as of the date of delivery to Buyer; (f) all goods covered hereby may be introduced into interstate commerce without violation of applicable laws and regulations; (g) all services have been performed in a good and workmanlike manner; and (h) all goods al 1 d services famished or rendered pursuant to this Purchase Order have been produced, sold, delivered or

>rendered to Buyer in compliance with all applicable laws and regulations, including those set forth in Section 14.

78. PowerMax, DMA, and KOF breached their (i) express warranty for merchantability and/or (ii) express warranty of fitness for a particular purpose to AVI through one or more of the following acts and/or omissions:

   a. designing, manufacturing, distributing and/or selling a defective fan motor;

   b. designing, manufacturing, distributing and/or selling a product that was unsafe for its intended use;

   c. designing, manufacturing, distributing and/or selling a fan motor that posed a risk of fire;

   d. failing to properly inspect and/or test the fan motor to discover it was unreasonably dangerous and/or defective;

   e. failing to discover defects in the fan motor;

   f. failing to remove the fan motor from the marketplace when PowerMax USA Defendants knew or should have known it was unreasonably dangerous and/or defective; and/or

   g. designing, manufacturing, distributing and/or selling a product that was not reasonably fit, suitable or safe for its intended purpose.

79. As a direct and proximate result of PowerMax, DMA, and KOF's breach of express warranties, AVI has incurred and will continue to incur monetary damages from the defective fan motor supplied by PowerMax, DMA, and KOF, including but not limited to cost associated with the replacement of real and personal property damaged as a result of PowerMax, DMA, and KOF's defective fan motor, loss of good will and business reputation, and attorneys' fees and cost in defending against Plaintiff's claims.

**WHEREFORE**, AVI requests that if AVI is found liable to the Plaintiff, then PowerMax, DMA, and KOF should be held liable to AVI for all damages awarded to Plaintiff and for all attorney's fees, fees of any kind, costs, and all other and further relief as the Court deems just.

Respectfully submitted,

*/s/ Craig S. Brodsky*
Craig S. Brodsky (Bar No.: 23939)
csb@gdldlaw.com
Justin E. Tepe (Bar No.: 19750)
jtepe@gdldlaw.com
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD  21202
(410) 783-4000
(410) 783-4040 – fax
***Attorneys for Defendant/Cross-Plaintiff***
***Air Vent, Inc.***

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 3rd day of June 2020, a copy of the foregoing was served electronically through the Court's CM/ECF system on:

| | |
|---|---|
| Craig S. Ronald<br>The Sophmar Building<br>Six East Mulberry Street<br>Baltimore, MD 21202<br>craig@landsmanlaw.com<br>***Attorneys for Plaintiff*** | Daniel Lynn<br>Zachary Chapman<br>Jackson Campbell, P.C.<br>1120 20th Street NW, South Tower<br>Washington, DC 20036<br>dlynn@jackscamp.com<br>zchapman@jackscamp.com<br>***Attorneys for Defendant/Cross-Defendant, King of Fans, Inc.*** |
| | Chad Stepan<br>David Bridges<br>Meagher & Geer, P.L.L.P.<br>33 South Sixth Street, Suiter 4400<br>Minneapolis, MN 55402<br>cstepan@meagher.com<br>dbridges@meagher.com<br>***Attorneys for Defendant/Cross-Defendant, King of Fans, Inc.*** |

  *And via E-mail on:*

Mark C. Cavanaugh
Dugan, Brinkmann, Maginnis and Pace
1880 John F. Kennedy Blvd., Suite 1400
Philadelphia, PA 19103
mccavanaugh@dbmplaw.com
***Attorneys for Plaintiff***

  *And via First-Class Mail to:*

| | |
|---|---|
| PowerMax Electric Co., LTD.,<br>Guandong<br>1-2 Region, South of Quibao Industries<br>Xinhiu District, Jiangmen City<br>Guandong, China 529100<br>***Defendant/Cross-Defendant*** | DM (Asia) Limited<br>Suite B/F, Kiu Fu Commercial Building<br>No. 300 Lockhart Road<br>Wanchai, Hong Kong, China<br>***Defendant/Cross-Defendant*** |

*/s/ Craig S. Brodsky*
Craig S. Brodsky (Bar No.: 23939)
