| | | |
|---|---|---|
| HARLEYSVILLE WORCESTER INSURANCE<br>COMPANY as subrogee of BARBARA FORD | * | IN THE FEDERAL COURT |
| | * | OF MARYLAND |
| Plaintiff | * | |
| vs. | * | |
| | * | |
| AIR VENT, INC. | | CASE NO. 1:20-cv-00802 |
| c/o: CT CORPORATION SYSTEM | * | |
| and | * | |
| POWERMAX ELECTRIC CO., LTD.,<br>GUANGDONG | * | |
| 1-4 Region, South of Qibao<br>Industries | * | |
| Xinhui District, Jiangmen City | * | |
| Guangdong Province, China 529156 | | |
| | * | |
| and | * | |
| DM (Asia) LIMITED | * | |
| Suite B/F, Kiu Fu Commercial Building | * | |
| No. 300 Lockhart Road | | |
| Wanchai, Hong Kong, China | * | |
| and | * | |
| KING OF FANS, INC. | * | |
| 1951 N.W. 22nd Street | | |
| Fort Lauderdale, FL 33311 | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED COMPLAINT

NOW COMES the Plaintiff, HARLEYSVILLE WORCESTER INSURANCE COMPANY as subrogee of BARBARA FORD by and through its attorney, Craig K. Ronald, Esquire, and Landsman & Ronald, LLC., complaining against the above-named Defendants, AIR VENT, INC. c/o CT COPORATION SYSTEM, POWERMAX

**EXHIBIT B**

ELECTRIC CO., LTD., GUANGDONG, DM (ASIA) LIMITED, AND KING OF FANS, INC., jointly and severally, and respectfully allege as follows:

1.      Plaintiff, Harleysville Worcester Insurance Company (hereinafter "Plaintiff Harleysville") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and maintains a principal office located at 120 Front Street, Suite 400, Worcester, MA 01608.

2.      At all times material hereto, Plaintiff Harleysville conducted and transacted business within the State of Maryland and specifically in Carroll County.

3.      At all times material hereto, Plaintiff Harleysville issued a policy of insurance to its insured, Barbara Ford, said policy covering the property, including its structure and/or contents and insuring against other losses and effects on the date of the loss.

4.      Pursuant to said policy of insurance, plaintiff Harleysville made payments to its insured, Barbara Ford, as a result of a fire at said property on January 23, 2018.

5.      The fire was caused by a defect within an attic fan within Barbara Ford's residence. The fan was a gable mounted model APGH Air Vent fan (hereinafter "APGH fan").

6.      Plaintiff Harleysville is contractually, legally and equitably subrogated to the rights of recovery of its insured, Barbara Ford, to the extent of the payments made to or on behalf of Barbara Ford.

7.      Defendant Air Vent, Inc. is a Delaware company that is authorized to do business in the state of Maryland and has a designated registered agent for acceptance of service of process at CT Corporation Systems.

8.      Defendant Powermax Electric Co., Ltd., Guangdong (hereinafter "Defendant Powermax") is a foreign corporation based in China that designed, manufactured and/or otherwise placed the subject attic fan which will be described in particularity below, in the stream of commerce and has a principal business location located at 1-4 Region, South of Qibao Industries, Xinhui District, Jiangmen City, Guangdong Province, China 529156. Pursuant to international treaties of the United States of America named the Hague Convention and/or letters rogatory.

9.      Defendant DM (Asia) Limited (hereinafter "Defendant DM Asia") is a foreign corporation that designed, manufactured or otherwise placed the subject APGH attic fan in the stream of commerce and has a principal business location located at Suite B, 5/F, Kiu Fu Commercial Building, No. 300 Lockhart Road, Wanchai, Hong Kong, China pursuant to international treaties of the United States of America, named the Hague Convention and/or letters rogatory.

10.      Defendant King of Fans, Inc. (hereinafter "Defendant King of Fans") is a corporation organized and existing under the laws of the state of Florida wherein it maintains a principal place of business located at 1951 N.W. 22nd Street, Fort Lauderdale, FL 33311.

11.      At all times material hereto, Defendant King of Fans owned Defendant Powermax and/or was in a joint venture with Powermax and with Defendant Powermax

and Defendant DM Asia to design, manufacture, distribute and sell in the United States, APGH fan manufactured at Defendant Powermax facility in China.

12.     The January 23, 2018 fire at the insured's property originated in the attic in the Ford property.

13.     Barbara Ford purchased two (2) identical APGH ceiling fans from a local Home Depot store and the two fans were installed within the attic of the Ford property in 2006.

14.     One of the two APGH fans malfunctioned causing a fire at the Ford property.

15.     The fire caused real and personal property losses to the Ford property.

16.     The fire was caused due to a defect in one of the APGH fan motors. Specifically, the motor failed, causing the motor to heat up to a dangerously high temperature and ignite surrounding combustible materials and spread.

17.     The fire occurred due to the fault of Defendants, jointly and severally, and was due in no manner to any act or failure to act on the part of Barbara Ford or any other persons within her household.

18.     The APGH fan was manufactured, designed, marketed, packaged, labeled, constructed, tested, inspected, warranted, sold and distributed by defendant and was not altered or damaged in any manner whatsoever by the insured at any time from the time of purchase through purchase, installation, up and through including the date of the fire.

19. Prior to Barbara Ford's purchase of the APGH fan, defendants were aware that the fan contained an inherent defect and that defect was present at the point of sale and caused the APGH fan to catch fire.

20. At all times material hereto, defendants knew that:

    a.    The risk of failure of the APGH fan was substantial due to the inherent defects;

    b.    Plaintiff Barbara Ford was unaware of the substantial risk that the APGH fan would cause a fire;

    c.    Barbara Ford had a reasonable expectation that defendants would disclose these risks and had cure the defects associated with their products.

21. The damages sustained by plaintiff flows directly from the core of common facts surrounding defendants' misconduct, including, but not limited to:

    a.    The APGH fan suffered from a defect known to defendants that led to the fire;

    b.    The APGH fan was not fit for its intended use at the time of the sale;

    c.    The defendants did not provide adequate warnings/ Instructions concerning the defective nature of the APGH fan.

**CAUSES OF ACTION**
**COUNT I – STRICT LIABILITY**
**DESIGN DEFECT**
**(AGAINST ALL DEFENDANTS)**

22. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

23. Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold a defective APGH fan.

24.     The APGH fan unit that Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold was defective in its design, and was defective when it left Defendants control.

25.     At the time the APGH fan unit was sold, it was in the same dangerously defective condition in which it left Defendants' possession and/or control.

26.     Plaintiff's Insured was a member of the class of entities that Defendants should reasonably have foreseen as being subject to the harms caused by the APGH fan's defective condition.

27.     Defendants knew, or should have known, that the APGH fan contained obvious dangers in its design.

28.     The foreseeable risks associated with the dangerous design of Defendants' APGH fan exceeded the benefits associated with its design.

29.     Defendants are strictly liable to Plaintiff Harleysville for the damages suffered by Plaintiff because of the risks inherent in the design of the APGH fan outweighing any utility of the chosen design thereby rendering the APGH fan defective, unreasonably dangerous and not reasonably suited to the user for which it was intended. Defendants' APGH fan was defectively designed in one or more of the following ways:

        a.      Defendants designed the APGH fan without concern for safely and performance;

        b.      Defendants designed the  APGH fan without concern to an unreasonable risk of harm;

6

c.     Defendants designed the APGH fan without concern that it endangered the real and personal property of the Plaintiff's Insured;

d.     Defendants failed to properly test and inspect the APGH fan during the design stage prior to mass production;

e.     Defendants designed the APGH fan without concern for appropriate material selection;

f.     Defendants designed the  APGH fan without concern for maximum functionality;

g.     Defendants designed the APGH fan without concern for potential fire from failure of the unit;

h.     Defendants designed the APGH fan without concern for compliance with, all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements; and

i.     Defendants defectively designed the APGH fan in other ways, under circumstances, to be determined.

30.     As a direct and proximate result of Defendants' aforesaid acts and/or omissions, for which Defendants are strictly liable, Plaintiff's Insured suffered damage to her real and personal property, as well as the loss of use of said property, extra expenses and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

31.     By virtue of the aforesaid payments and pursuant to the terms of the aforesaid insurance policy, Plaintiff Harleysville, is legally, equitably, and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

32.     In the event that Plaintiff becomes obligated to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

33.     All Defendants are jointly and severally liable.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against Defendants for all damages allowed by law in the utmost amount allowed by law to be decided by a jury, plus interest, costs and attorneys' fees in excess of $75,000.

## COUNT II – STRICT LIABILITY
## MANUFACTURE DEFECT
## (AGAINST ALL DEFENDANTS)

41.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein

42.     Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold a APGH fan to Plaintiff's Insured.

43.     The APGH fan that Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold was defective in its manufacturing process, and was defective when it left Defendants' control.

44.     At the time the APGH fan was sold, it was in the same dangerously defective condition in which it left Defendants' possession and/or control.

45.     Plaintiff's Insured was a member of the class of entities that Defendants should reasonably have foreseen as being subject to the harms caused by the APGH fan's defective condition.

46.     Defendants knew, or should have known, that the APGH fan contained non-obvious dangers in the manner by which it was manufactured.

47.     The foreseeable risks associated with the dangerous manner by which Defendants' APGH fan was manufactured exceeded the benefit associated with the APGH fan.

48.     Defendants are strictly liable to Plaintiff for the injuries suffered by Plaintiff 's Insured because the risks inherent in the manufacture of the APGH fan outweighed any utility of the chosen manufacturing process, thereby rendering the APGH fan defective, unreasonably dangerous and not reasonably suited to the user for which it was intended. Defendants' APGH fan was defectively manufactured in one or more of the following ways:

> a.     Defendants manufactured the APGH fan without concern for safety and performance;
>
> b.     Defendants manufactured the APGH fan without concern to an unreasonable risk of harm
>
> c.     Defendants manufactured the APGH fan without concern that endangered the real and personal property of Plaintiffs' Insured;
>
> d.     Defendants failed to properly test and inspect the APGH fan before it left Defendants' control;

e.      Defendants manufactured the APGH fan without concern for appropriate material selection;

f.      Defendants manufactured the APGH fan without concern for maximum functionality;

g.      Defendants manufactured the APGH fan without concern for the risk of fire from failure of the motor;

h.      Defendants manufactured the APGH fan without concern for compliance with, all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements; and

i.      Defendants manufactured the APGH fan in other ways, under the circumstances, to be determined.

49.      As a direct and proximate result of Defendants' aforesaid acts and/or omissions, for which Defendants are strictly liable, Plaintiff's Insured suffered damage to her real and personal property, as well as the loss of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

50.      By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

51.      In the event the Plaintiff becomes obligate to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

52.     All Defendants are jointly and severally liable.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against Defendants for all damages allowed by law in the utmost amount allowed by law to be decided by a jury, plus interest, costs and attorneys' fees in excess of $75,000.

## COUNT III – NEGLIGENCE
## NEGLIGENT DESIGN
## (AGAINST ALL DEFENDANTS)

53.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

54.     Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold a defective APGH fan to Plaintiff's Insured.

55.     The APGH fan that Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold warranted was defective in its design, and as defective when it left Defendants' control.

56.     At the time the APGH fan was sold, it was in the same dangerously defective condition in which it left Defendants' possession and/or control.

57.     Plaintiff's Insured was a member of the class of entities that Defendants should reasonably have foreseen as being subject to the harms cause by the APGH fan's defective condition.

58.     Defendants were negligent in that they failed to use reasonable care when they designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold the APGH fan.

59.     The foreseeable risks associated with the dangerous design of Defendants' APGH fan exceeded the benefits associated with the design of Defendants' APGH fan.

60.     As the manufacturer and/or seller of a consumer product, Defendants owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide a product that would perform as intended and expected. Defendants owed a duty to disclose the defects the defects that they knew, or should have known, existed, yet failed to do so to the detriment of the Plaintiff's Insured.

61.     Defendants breached these duties in one or more of the following ways:

      a.     Defendants knew or should have known that their APGH fan was designed without concern for safety and performance;

      b.     Defendants knew or should have known that their APGH fan was designed without concern for an unreasonable risk of harm;

      c.     Defendants knew or should have known that their APGH fan was designed without concern that it endangered the real and personal property of Plaintiff's Insured;

      d.     Defendants failed to properly test and inspect the APGH fan during the design state, prior to mass production;

      e.     Defendants knew or should have known that their APGH fan was designed without concern for failure resulting in a fire;

      f.     Defendants knew or should have known that their APGH fan was designed without concern for maximum functionality;

g.      Defendants knew or should have known that their APGH fan was designed without concern for potential motor failure resulting in a fire.

h.      Defendants knew or should have known that their APGH fan was designed without concern for the potential failure resulting in a fire;

i.      Defendants knew or should have known that their APGH fan was designed without concern for compliance with, all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements; and

i.      Defendants negligently designed the APGH fan in other ways, under the circumstances, to be determined.

62.    As a direct and proximate result of Defendants' aforesaid negligent acts and/or omissions, for which Defendants are liable, Plaintiff's Insured suffered damage to her real and personal property, as well as the loss of use of said property, extra expenses and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this court.

63.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

64.    In the even that Plaintiff because obligated to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

65.     All Defendants are jointly and severally liable.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against Defendants for all damages allowed by law in the utmost amount allowed by law to be decided by a jury, plus interest, costs and attorneys' fees in excess of $75,000.

## COUNT IV – NEGLIGENCE
## NEGLIGENCE MANUFACTURE
## (AGAINST ALL DEFENDANTS)

66.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

67.     Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold a APGH fan  to Plaintiff's Insured.

68.     The APGH fan  that Defendants designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold was defective in its manufacturing process and was defective when it left Defendants' control.

69.     At the time the APGH fan was sold, it was in the same dangerously defective condition in which it left Defendants' possession and/or control.

70.     Plaintiff's Insured was a member of the class of entities that Defendants should reasonably have foreseen as being subject to the harms caused by the APGH fan's defective condition.

71.     Defendants were negligent in that they failed to use reasonable care when it designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold their APGH fan.

72.     The foreseeable risks associated with the dangerous manufacture of Defendants' APGH fan exceeded the benefits associated with the design of Defendants' APGH fan.

73.     As the manufacture and/or seller of a consumer product, Defendants owed a duty to Plaintiff's Insured to provide safe and quality products and a duty to provide a product that would perform as intended and expected. Defendants owed a duty to disclose the defects that they knew, or should have known, existed, yet failed to do so to the detriment of the Plaintiff's Insured.

74.     Defendants breached these duties in one or more of the following ways:

a.      Defendants knew or should have known that their APGH fan was manufactured without concern for safety and performance;

b.      Defendants knew or should have known that their APGH fan was manufactured without concern for an unreasonable risk of harm;

c.      Defendants knew or should have known that their APGH fan was manufactured without concern that it endangered the real and personal property of Plaintiff's Insured;

d.      Defendants failed to properly test and inspect their APGH fan before it left Defendants' control;

e.      Defendants knew or should have known that their APGH fan was manufactured without concern for potential failure resulting in a fire;

f.      Defendants knew or should have known that their APGH fan was manufactured without concern for maximum functionality;

g.    Defendants knew or should have known that their APGH fan was manufactured without concern or in compliance with, all local, state and federal codes, regulations, ordinances, standards, recommendations and/or requirements; and

h.    Defendants negligently manufactured the APGH fan in other ways, under the circumstances, to be determined.

75.    As a direct and proximate result of Defendants' aforesaid negligent acts and/or omissions, for which Defendants are liable, Plaintiffs' Insured suffered damage to her real and personal property, as well as the use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

76.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

77.    In the event that Plaintiff becomes obligated to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

78.    All Defendants are jointly and severally liable.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against Defendants for all damages allowed by law in the utmost amount allowed by law to be decided by a jury, plus interest, costs and attorneys' fees in excess of $75,000.

## COUNT V – BREACH WARRANTY
## (AGAINST ALL DEFENDANTS)

79.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

80.     Defendants' APGH fan is a good and Defendants are merchants with respect to the APGH fan.

81.     Defendants' implied warranty of merchantability accompanied the sale of the APGH fan to Plaintiff's Insured. Defendants warranted that the APGH fan was fit for ordinary use.

82.     The materials, design and failure of the APGH fan made it defective and unfit for the ordinary purpose for which it was used. The APGH fan was not fit for ordinary use.

83.     Any effort by defendants to disclaim or limit their responsibility for their defective APGH fan would be unconscionable under the circumstances because Defendants knew, or should have known, their PTAC was unfit for normal use. Through their conduct, Defendants breached their implied warranty of merchantability and are liable to Plaintiff's Insured.

84.     Defendants breached their warranties in one or more of the following ways:

        a.     Failing to manufacture and/or design the APGH fan in a safe manner;

        b.     Selling and/or distributing the defective APGH fan that subjected Plaintiff's Insured and their real and personal property to unreasonable risks of harm;

        c.     Failing to design, manufacture, and test the APGH fan to ensure it was safe for its intended usage;

        d.     Failing to act as a reasonably prudent corporation would have under the

same or similar circumstances; and

    e.       Breaching their warranty in other ways, under the circumstances, to be

determined.

85.     As a direct and proximate result of Defendants' aforesaid negligent acts and/or omissions, for which Defendants are liable, caused Plaintiff's Insured damage to her real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this court.

86.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policy, Plaintiff is legally, equitably and contractually subrogated to the rights of Plaintiff's Insured to the extent of such payments.

87.     In the event that Plaintiff becomes obligated to pay additional sums for this loss in the future, Plaintiff prays for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

88.     All Defendants are jointly and severally liable.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against Defendants for all damages allowed by law in the utmost amount allowed by law to be decided by a jury, plus interest, costs and attorneys' fees in excess of $75,000.

Respectfully submitted,

_____/S/_ _____
**CRAIG K. RONALD (#25875)**

Landsman & Ronald

The Sophmar Building

Six East Mulberry Street

Baltimore, Maryland 21202
410-752-4220

410-752-4046 (Fax)
craig@landsmanlaw.com
Attorney for Plaintiff

| | | |
|---|---|---|
| HARLEYSVILLE WORCESTER INSURANCE COMPANY as subrogee of BARBARA FORD | * | IN THE FEDERAL COURT |
| | * | OF MARYLAND |
| Plaintiff | * | |
| vs. | * | |
| | * | |
| AIR VENT, INC. | | CASE NO. 1:20-cv-00802 |
| c/o:  CT CORPORATION SYSTEM | * | |
| and | * | |
| POWERMAX ELECTRIC CO., LTD., GUANGDONG | * | |
| 1-4 Region, South of Qibao Industries | * | |
| Xinhui District, Jiangmen City | * | |
| Guangdong Province, China  529156 | * | |
| and | * | |
| DM (Asia) LIMITED | * | |
| Suite B/F, Kiu Fu Commercial Building | * | |
| No. 300 Lockhart Road | | |
| Wanchai, Hong Kong, China | * | |
| and | * | |
| KING OF FANS, INC. | * | |
| 1951 N.W. 22nd Street | | |
| Fort Lauderdale, FL  33311 | * | |
| Defendants | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## **REQUEST FOR JURY TRIAL**

Clerk:

Plaintiff, Harleysville Worcester Insurance Company as subrogee of Barbara and Steven Ford, requests that the above case be tried before a jury.

Respectfully submitted,

_____/S/_____
**CRAIG K. RONALD (#25875)**
Landsman & Ronald
The Sophmar Building
Six East Mulberry Street
Baltimore, Maryland 21202
(410) 752-4220
(410) 752-4046 (Fax)
craig@landsmanlaw.com
Attorney for Plaintiff