UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| HARLEYVILLE WORCHESTER INSURANCE COMPANY a/s/o BARBARA FORD<br><br>    Plaintiff<br><br>v.<br><br>AIR VENT, INC., *et al.*,<br><br>    Defendants | **Case No.: 1:20-cv-00802-RDB** |

**MEMORANDUM IN OPPOSITION OF DEFENDANT POWERMAX ELECTRICAL CO. LTD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.  STATEMENT OF FACTS

This memorandum of law is issued in opposition to Defendant Powermax's motion to dismiss based off of ostensible F.R.C.P. 12(b)(2) concerns. Plaintiff Harleysville Worcester Insurance Company acts in the instant litigation as subrogee of Ms. Barbara Ford, a Maryland Resident. Along with Defendant Powermax, Plaintiff has sued Defendants Air Vent, Inc., Direct Marketing Asia, and King of Fans.

On January 23, 2018, the home of Plaintiff's insured, Ms. Barbara Ford, caught fire and suffered significant damages. The fire was caused due to a defect in one of the APGH fan motors housed in Ms. Ford's attic. The subject motor was designed and manufactured by Defendant Powermax and placed as a component part into an attic-ventilation fan manufactured and sold by Defendant Air Vent, Inc.

Defendant Powermax is a Chinese business which designs and manufactures electronic components, including the subject fan motor. It comprises a joint venture with its co-defendants, King of Fans and Direct Marketing Asia. Though it often sells its products to Direct Marketing Asia, who then resells these products to American companies and consumers, it has sold nearly 100,000 of the subject motors to Defendant Air Vent, Inc. directly. All of its products are shipped internationally from its own warehouse, and its customer-facing communications clearly indicate that it caters to an American market.

## II.  ARGUMENT

A. Legal Standard

Defendant Powermax's motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(2), which concerns "lack of personal jurisdiction." When this rule is invoked, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d

673, 676 (4th Cir.1989). However, Plaintiff's burden of proof is herein alleviated on two accounts. First, because the Court has not conducted "an evidentiary hearing or [has not] deffer[ed] ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 629 (4th Cir.1997) (quoting *Combs*, 886 F.2d at 676). Second, "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676

    B.  <u>This Court Possesses Specific Jurisdiction Over Defendant Powermax</u>

In its motion to dismiss, Defendant Powermax asserts an ostensible lack of personal jurisdiction for want of sufficient minimum contacts with the forum state. This requirement, cited by Defendant Powermax, is one that finds its footing in judicial fairness. *International Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945) ("[A defendant] must have certain minimum contacts with [the forum state] that maintenance of the suit does not offend traditional notions of fair play and substantial justice."). Yet, fairness in this matter cuts both ways, and "[W]here individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause cannot be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp. v. Rudzewicz* 471 U.S. 462, 473-74 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984)). "[Focusing on the defendant's in-state contacts] follows from the touchstone principle of due process in this field, the concept of reciprocal fairness. When a corporation chooses to invoke the benefits and protections of a State in which it operates, the State acquires the authority to subject the company to suit in its courts." *Daimler AG v. Bauman*, 571 U.S. 117, 151 (2014)

(Sotomayor, J., concurring). Defendant Powermax intentionally sought to benefit from the Maryland economic market and, therefore, must be found to fall under the ambit of this Court's jurisdiction.

Regarding questions of specific jurisdiction over claims of products liability, "The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Machinery, Ltd. v. Nicastro*, 546 U.S. 873, 882 (2011). When deliberating on whether such an intention has been manifested, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The purposeful availment inquiry asks whether a defendant has 'deliberately target[ed]' its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 36 (1st Cir.2011) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)).

To establish minimum contacts, the defendant's relation to the forum state cannot be solely "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 473-74. Rather, the contacts must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* In *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017 (2021), the Supreme Court found that Ford Automotive had sufficient contacts in two jurisdictions in which it was not domiciled because it had "actively sought to serve the market for automobiles and related products in those States."

The *Ford* Court further held that a product which malfunctions in the forum state, even if it had not been manufactured there, establishes a sufficient minimum contact for specific jurisdiction over the defendant. Similarly, just as Defendant Powermax manufactured and sold its motors from its

principal place of business in Guangdong, China, its connections with the forum state, explicated below, warrant personal jurisdiction due to the fact that the product malfunctioned in Maryland and that Defendant Powermax sought to avail itself of the commercial market in that state.

Despite what Defendant Powermax claims, it has purposefully and intentionally cultivated a market for its products in the State of Maryland. Firstly, the facts of the instant case have already been litigated in near-identical fashion in the Superior Court of Arizona. (See Exhibit 1: Minute Entry of the Superior Court of Arizona, Maricopa County). There, the Court found jurisdiction based off of several salient facts. It noted that "Powermax is a joint venture with Cross-Defendant King of Fans ("KOF"), Chien Luen and Direct Marketing Asia, Ltd ("DMA"). (Exhibit 1) Defendant Powermax affirms this characterization itself, stating on its website that it is "an export-oriented Sino-foreign joint venture company" (Exhibit 2: Powermax Website: About) and referring to "The US KOF company" as a "shareholder company." (Exhibit 3: Powermax Website: News). Defendant Powermax claims that it did not purposefully target the United States market because the subject motor had first been sold to Defendant Direct Marketing Asia, who then sold it to Defendant King of Fans. However, the subject motor's arrival into the United States market was not mere fortuity but obviously an organized and concerted effort between joint-venture partners to reach American consumers.

Moreover, according to the facts deliberated by the Arizona Superior Court, Defendant Powermax overstates Defendant Direct Marketing Asia's role as intermediary. While Defendant Direct Marketing Asia typically facilitates orders for Defendant Powermax's products, Defendant Powermax often directs sales itself. The Arizona Court found that "From 2003-11, Powermax periodically sent invoices directly to [Defendant] AVI[1] for fan motors manufactured by Powermax for AVI. At least 91,354 Powermax fan motors were invoiced directly from Powermax to AVI." (Maricopa). Defendant Direct Marketing Asia, a company with no manufacturing capabilities or

---

[1] "AVI" refers to Defendant Air Vent, Inc.

engineering expertise, purchases all its fan motors *exclusively* from Defendant Powermax. Additionally, "All Powermax motors… were shipped directly to AVI from the Powermax facility in Guangdong, China." (Exhibit 1). The Supreme Court has noted that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed at the forum state." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S.S 102, 112 (1987) (O'Connor, J., concurring). However, in the same breath, it is provided that "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State," *Id.*, itself is likely to constitute such a purposeful act. In its arrangement with Defendant Powermax, Defendant Direct Marketing Asia merely operated as an arm of the former's commercial interests, and the results thereof constitute a minimum contact on which specific jurisdiction may be found.

Defendant Powermax has also applied for and obtained a United Labs US standard certification. United Labs is a non-governmental, third-party safety appraiser. Its trademark certification is highly respected and sought out by entities wishing to sell their products in the United States, as it signifies a certain threshold of quality and safety. Defendant Powermax's actions in this matter demonstrate that it is intentionally attempting to entreat the American consumer to purchase its products. Rather than simply finding a foothold in the American market by happenstance, it has actively and continuously attempted to avail itself of economic opportunities in the Maryland and the other U.S. states through the use of American trademarks and the efforts of other the entities with which it comprises its joint venture.

Lastly, according to Defendant Powermax's website, "100% of products of the company are exported to USA, Canada, Europe, South America etc." This means that, though Defendant Powermax is domiciled in Guangdong, China, it would only expect to be held in account for any injury or harm resulting from its products in foreign jurisdictions. Defendant Powermax would reasonably

be expected for such accountability to warrant from this Court. Not only does Defendant Powermax boast that it holds a 10% market share for decorative fans in the United States (Exhibit 2), but it also positions itself to its customers as American-centric, as evidenced by the fact that its helpline is available "between the hours of 8:30 am and 5:00 pm Eastern Standard Time. (Exhibit 4: Powermax Website: FAQ).

### III. CONCLUSION AND RELIEF REQUESTED

Defendant Powermax's claim that this Court does not possess jurisdiction over it in this matter belies the facts at hand and is a naked attempt to elude liability for products it should have reasonably foreseen being held to account for in this jurisdiction. Through its business dealings with its partners in its joint venture, Defendants King of Fans and Direct Marketing Asia, Defendant Powermax purposefully availed itself of the benefits of the commercial market and consumers of Maryland and the notions of fair play and substantial justice require that its motion to dismiss for lack of personal jurisdiction be denied.

Respectfully submitted,

DUGAN, BRINKMANN, MAGINNIS and PACE


*/s/Mark C. Cavanaugh*
Mark C. Cavanaugh, Esquire
Attorney for Plaintiff